**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 18-55347 |
| | : | |
| **The Gathering Place of Columbus** | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge C. Kathryn Preston |

**MOTION OF THE GATHERING PLACE OF COLUMBUS, DEBTOR AND DEBTOR IN POSSESSION, FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105 AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES TO THE DEBTOR, (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES TO DETERMINE REQUESTS FOR ADEQUATE ASSURANCE OF PAYMENT**

The Gathering Place of Columbus, as debtor and debtor in possession ("Debtor" or "The Gathering Place") hereby moves this Court for entry of interim order (then final order (the "Final Utility Order"), to be circulated to the appropriate parties and submitted to the Court at the appropriate time) substantially in the form of <u>Exhibit B</u> (the "Interim Order"), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), (i) prohibiting Debtor's utility providers from altering, refusing, or discontinuing utility service to Debtor, (ii) deeming Debtor's utility providers adequately assured of future performance, and (iii) establishing procedures to determine requests for adequate assurance of payment by Debtor's utility providers.

In support of this motion (the "Motion"), Debtor respectfully represents as follows:

**JURISDICTION**

1. The Debtor commenced this case by the filing of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on August 24, 2018 (the "Petition Date"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The matters raised herein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2). The Debtor continues to operate its

business as a debtor in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.

## BACKGROUND

3. The Debtor, The Gathering Place of Columbus, is an Ohio non-profit 501(c)(3) religious organization serving the Columbus area, operating out its church facility located at 3550 E. Deshler Ave., Columbus, OH 43227 (the "Church Facility"). The Debtor was founded in May of 1993, as an Ohio non-profit corporation having the charter number of 844254, then known as Romans Church of God of the Apostolic Faith, Inc. In 1995, the Debtor's name was changed to Roman Apostolic Church Incorporation. Effective January 1, 2014 the Debtor merged with another Ohio non-profit corporation called The Gathering Place of Columbus, having charter number 2103567 ("Old Gathering Place of Columbus"), with the Debtor being the surviving entity, but with its name changed to The Gathering Place of Columbus. As part of the merger, Old Gathering Place of Columbus was merged out of existence.

4. In addition to providing a house of worship, the Debtor also operates a daycare facility known as The Gathering Place Academy. The Gathering Place Academy is a d/b/a of the Debtor. The Debtor's mission is to provide religious based services to all people regardless of age, race, and economic status, including day care services. The Debtor primarily serves low-income individuals and families in and around the Linwood area of Columbus. Just prior to the merger in January of 2014, Pastor Lateef Hafeez was appointed by the Debtors' Board of Trustee's as President and Chief Executive Officer ("Pastor Lateef").

5. Following the merger in 2014, the Debtor discovered that the Church Facility was in need of significant repairs to its HVAC system in excess of $40,000.00. In addition to the cost of these repairs, Pastor Lateef and the Trustees discovered legacy debts from its operation as Roman Apostolic Church Incorporation. Thus from the outset of the merger, the Debtor operated in extreme financial hardship for several years.

6.      The Debtor's revenue is primarily derived from funding provided by the Ohio Department of Jobs and Family Services, in conjunction with its daycare services, as well as from tithing from its church congregation.  The Debtor's total revenues for the 2017 year end were $442,326.18.

7.      The Debtor directly employs twelve (12) people, four (4) of which are part time, and eight (8) of which are full time (the "Employees").[1]  Of the Employees, seven (7) work directly with the daycare services provided to low income families, and the remaining five (5) are employed for purposes of religious services.

8.      The Debtor's financial hardships ultimately culminated in its inability to stay current with payments owed to Heartland Bank relative to a cognovit promissory note that is secured by a first mortgage on the Church Facility.  The Heartland financing was incurred back in January of 2008.  In April of 2017, Heartland Bank initiated a lawsuit against the Debtor in the Franklin County Common Pleas Court, Case No. 17 CV 0003871, wherein Heartland Bank was ultimately awarded a cognovit judgment in its favor in the principal amount of $404,927.94.  Shortly thereafter, in June of 2017, Heartland Bank initiated a foreclosure action against the Debtor as it relates to the Church Facility in the Franklin County Common Pleas Court, Case No. 17 CV 5296.  The Debtor and Heartland Bank entered into a forbearance agreement, but disputes arose regarding the parties' respective performance under that agreement, culminating in a demand letter issued in May of this year, by Heartland Bank.  Ultimately, Heartland reinitiated its efforts to foreclose on the Church Facility, and the Church Facility is presently set for a foreclosure sale on August 29, 2018.

9.      In addition to the secured obligation owed to Heartland Bank, the Debtor has approximately $99,405.00[2] in other secured debt and approximately $38,095.00 in unsecured priority and non-priority debt.[3]

---

[1] The Debtor's employee count fluctuates between eleven (11) and thirteen (13) Employees.  Approximately three (3) to four (4) of such Employees are employed on contract basis.
[2] The Debtor acknowledges that Huntington National Bank has a UCC-1 Financing Statement reflecting a blanket lien on assets filed of record with the Ohio Secretary of State.  However, the Debtor submits that this obligation has been paid in full, and thus no cash collateral arrangements are presently necessary

10. The Debtor commenced this Chapter 11 proceeding to bring a halt to the foreclosure of the Church Facility, and to address its financial situation in a centralized forum. The Debtor expects to timely propose a Chapter 11 Plan in an effort to reorganize its financial affairs.

### RELIEF REQUESTED

11. In the normal course of its business operations, Debtor contracts with certain of its utility providers with respect to its Church Facility for the provision of, among other things, water and sewer, electricity, and gas services. Prior to the Petition Date, Debtor spent approximately $1,150.00 per month for utilities. (The utility providers shall singularly be referenced as a "Utility", and, collectively, the "Utilities"). The names of each Utility are listed on Exhibit A attached hereto.[4]

12. By this Motion, Debtor seeks entry of interim and final orders: (a) prohibiting the Utilities from discontinuing, altering or refusing service to Debtor except as set forth herein; (b) deeming the Utilities to be adequately assured of payment on the basis of the proposed Adequate Assurance, as defined below; and (c) establishing procedures for resolving requests for additional assurance of payment. Although Debtor seeks the continued provision of utility services from the Utilities, Debtor is not seeking authority or direction to pay any specific claim.[5]

13. Debtor intends to pay all post-petition obligations owed to the Utilities in a timely manner.

14. Section 366 of the Bankruptcy Code prevents the Utilities from altering, refusing, or discontinuing utility service to Debtor during the first thirty (30) days of Debtor's chapter 11 case. See 11

---

[3] The Debtor reserves the right to review and, to the extent it deems appropriate, contest the validity of any and all claims presented against both it and the estate. Information regarding the amount of secured and unsecured debt is provided by way of background for the purposes of context

[4] The inclusion of any entity on, or the exclusion of any entity from, Exhibit A is not an admission by the Debtor that such entity is, or is not, a "utility" for purposes of section 366 of the Bankruptcy Code. The Debtor reserves the right to contest any entity's status as a "utility" at a later date.

[5] Nothing contained here is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is a type specified or defined hereunder; or (v) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

4

U.S.C. § 366(a) and (c)(2). If Debtor does not provide each Utility with "adequate assurance of payment" by the end of such 30-day period, however, the Utility may then alter, refuse, or discontinue service. See 11 U.S.C. § 366(c)(2).

15. Debtor cannot operate without the services provided by the Utilities, and any disruption, particularly to Debtor's electrical power, gas, and water and sewer services could cause significant damage to the Debtor's ongoing business operations and estate. For these reasons, the Debtor must ensure the continued provision of utility services.

16. In accordance with section 366(c)(1)(A) of the Bankruptcy Code, Debtor proposes to provide adequate assurance of payment (the "Adequate Assurance") by a combination of two means. First, Debtor proposes to pay in the ordinary course of its business, the most recent prepetition invoices for the Utilities. As of the Petition Date, the Debtor is current on payment of all prepetition invoices that were due as of the Petition Date by the Debtor from Utilities, but has received invoices from certain Utilities that are not yet due. The Debtor further anticipates that it will receive, on a post-petition basis, invoices from certain other Utility providers which cover both pre- and post-petition periods. To that end, the Debtor anticipates that the amount attributable to a prepetition period will not exceed the Debtor's average monthly Utility costs of approximately $1,150.00. Next, upon receipt of the Adequate Assurance Request (as defined below), Debtor proposes to deposit, for the benefit of such requesting Utility without a prepetition deposit, a sum equal to one month of the Debtor's estimated monthly utility consumption for such Utility, calculated as an average of the twelve (12) month cost (the "Adequate Assurance Deposit"), into a newly-created, segregated, interest-bearing account (the "Adequate Assurance Deposit Account") within twenty (20) days after receipt of the Adequate Assurance Request (as defined below). The Debtor notes that it previously tendered deposits to all the Utilities as follows: AEP ($813.00), Columbia Gas ($241.00) and City of Columbus, Water and Sewer ($500.00). Debtor is not proposing to pay an additional deposit to these Utilities, over and above the average one month cost of its utility services. However, in the event a Utility makes an Adequate Assurance Request, the Debtor proposes to pay an additional deposit as an Adequate Assurance Deposit upon receipt of documentation by the Utility that

5

demonstrates the Debtor's average monthly utility consumption exceeds such prior deposit amount.

17. The payment of the most recent prepetition invoices, together with the funding of the Adequate Assurance Deposit (if requested) and Debtor's ready access to sufficient funds to pay for post-petition services provided by the Utilities constitute sufficient Adequate Assurance for the Utilities.

18. Debtor further submits that the Adequate Assurance Procedures, as described below will permit each Utility to seek additional or different Adequate Assurance in accordance with section 366 of the Bankruptcy Code, and will provide the Utilities with the protections afforded to it under the Bankruptcy Code, while protecting Debtor from any interruption in services. Specifically, Debtor proposes that the Court implement the following Adequate Assurance Procedures:

(a) Absent any further order of this Court and except as otherwise provided herein, the Utilities would not be able to alter, refuse or discontinue service to, or discriminate against, Debtor on account of the commencement of this Chapter 11 Case or any unpaid pre-petition charges, and also would not be permitted to request payment of a deposit or receipt of other security in connection with any unpaid pre-petition charges.

(b) Debtor will serve the Interim Utility Order, if granted by this Court, via first-class mail, within five (5) business days after the date that the Interim Utility Order is entered by this Court, on each of the Utilities identified on the list attached hereto as Exhibit A. In the event that any Utility inadvertently has been omitted from Exhibit A, Debtor, upon discovery of such omission, will file with this Court an amended Exhibit A (the "Amended Exhibit") adding the name of each inadvertently omitted (and subsequently discovered) utility (the "Added Utility"), and promptly will serve on each Added Utility this Motion, the Amended Exhibit and the Interim Utility Order or, if it has been entered, the Final Utility Order, as applicable (each such service, a "Supplemental Service").

(c) Any Utility would be able to submit a written request for an Adequate Assurance Deposit (an "Adequate Assurance Request") by submitting such written request to: J. Matthew Fisher, Allen Stovall Neuman Fisher & Ashton, LLP, 17 S. High Street, Suite 1220, Columbus, Ohio 43215 (the "Notice Party").

(d) Any Adequate Assurance Request must be in writing and: (i) set forth the location for which utility services are provided; (ii) include the account number(s) for such location; (iii) include the outstanding balance for each such account; (iv) include a summary of Debtor's payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by Debtor; and (v) include a proposal for what would constitute adequate assurance of payment from Debtor, along with an explanation of why such proposal is reasonable.

(e) Upon Debtor's receipt of an Adequate Assurance Request at the addresses listed in paragraph (c) above, Debtor will attempt to reach a consensual agreement with the Utility regarding the Utility's request for an Adequate Assurance Deposit.

6

(f) Debtor may, in its discretion, consensually resolve any Adequate Assurance Request with the requesting Utility without further order of the Court, and may, in connection with any such resolution and in their discretion, provide the Utility with additional Adequate Assurance, including a cash deposit, prepayments, and/or other forms of security, without further order of the Court, if Debtor determines in its business judgment that the additional Adequate Assurance is reasonable.

(g) If Debtor determines that the Adequate Assurance Deposit or any Adequate Assurance requested by the Utility is inaccurate or not reasonable, then Debtor shall, within thirty (30) days after the receipt of the Adequate Assurance Request, file a motion (the "Determination Motion"), pursuant to section 366(c)(3) of the Bankruptcy Code, seeking a determination from this Court that the Adequate Assurance Deposit, plus any additional consideration offered by Debtor, constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility that is the subject of the unresolved Adequate Assurance Request may not alter, refuse, or discontinue services to Debtor.

(h) Based on the funding of the Adequate Assurance Deposit, a Utility will be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further assurance of payment.

19. Debtor requests that the Court prohibit the Utilities from altering, refusing, or discontinuing services to Debtor absent a failure to comply with the Adequate Assurance Procedures.

20. In addition, as part of the relief requested on a final basis pursuant to the Final Utility Order, Debtor requests that if and to the extent Debtor becomes delinquent with respect to services provided by a Utility, and, after filing a notice of such delinquency (the "Delinquency Notice") with this Court and serving such notice on the Notice Party as well as (i) counsel to any official committee of unsecured creditors, (ii) Heartland Bank or its counsel, and (iii) counsel for the United States Trustee, Debtor has not cured such delinquency or a party-in-interest has not objected to the Delinquency Notice, in either case within ten (10) days, then Debtor shall remit to such Utility from the Adequate Assurance Deposit Account the lesser of (i) the amount allocated in the Adequate Assurance Deposit Account for such Utility account, and (ii) the amount of post-petition charges claimed as delinquent in the Delinquency Notice.

21. Debtor respectfully requests a final hearing on this Motion be held within twenty-five (25) days of the Petition Date to ensure that, if a Utility argues it can unilaterally refuse service to the Debtor on the 31st day after the Petition Date, Debtor will have the opportunity, to the extent necessary,

to request that the Court modify the Assurance Procedures in time to avoid any potential termination of service.

## BASIS FOR RELIEF REQUESTED

22. Debtor requires the relief requested in this Motion to ensure that the Utilities will provide Debtor with post-petition services without interruption. Debtor conducts its operations in Columbus, Ohio. The Debtor's operations depend upon water and sewer, gas, and electricity services, and even a short-term interruption in services could cause significant damage to Debtor's operations.

23. Under section 366 of the Bankruptcy Code, a utility company may not, during the first thirty (30) days of a chapter 11 case, alter, refuse, or discontinue services to a debtor solely because of unpaid pre-petition amounts. In 2005, Congress added subsection (c) to section 366 of the Bankruptcy Code. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 108-9, § 417, 119 Stat. 23, 108 (2005) (the "BAPCPA").

24. As a result of the BAPCPA amendments, under section 366(c) of the Bankruptcy Code, a utility company may alter, refuse, or discontinue service at the expiration of the thirty-day period following the Petition Date, if a debtor does not provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility provider.

25. The procedures proposed herein are designed to ensure that the Utilities receive the "adequate assurance" contemplated by section 366(c) of the Bankruptcy Code by providing for a fair and orderly method for processing requests by the Utilities for additional or different Adequate Assurance or for the Utilities to object to the procedures themselves. Absent the procedures proposed herein, the Utilities could force Debtor to address numerous and disorganized requests for Adequate Assurance at a time when Debtor needs to focus significant resources on managing its business operations during Debtor's transition into chapter 11.

26. Debtor respectfully submits that the Debtor's proposed method of furnishing adequate assurance of payment for post-petition utility service is not prejudicial to the rights of any Utility and is in the best interests of the Debtor's estate.

27. Further, under section 105(a) of the Bankruptcy Code, the Court possesses the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a).

28. As the proposed Adequate Assurance Procedures will ensure that Debtor continues to receive utility services provided by the Utilities without prejudice to the Utilities, Debtor submits that the relief requested in this Motion is necessary, appropriate, and in the best interests of Debtor and its estate and creditors.

**NOTICE**

29. No trustee, examiner or statutory committee has been appointed in Debtor's Chapter 11 case. Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Debtor's twenty (20) largest unsecured creditors as identified in its chapter 11 filing; (c) Heartland Bank or its Counsel; and (d) the Utilities. Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE,** Debtor respectfully hereby moves this court for entry of the Interim Utility Order attached as Exhibit B, and a Final Utility Order, granting the relief requested herein and such further relief as is just and proper.

Dated: August 24, 2018　　　　　　　　　　Respectfully submitted

　　　　　　　　　　　　　　　　　　　　/s/ J. Matthew Fisher
　　　　　　　　　　　　　　　　　　　　Thomas R. Allen　　(0017513)
　　　　　　　　　　　　　　　　　　　　J. Matthew Fisher　　(0067192)
　　　　　　　　　　　　　　　　　　　　Erin L. Gapinski　　(0084984)
　　　　　　　　　　　　　　　　　　　　Allen Stovall Neuman Fisher & Ashton LLP
　　　　　　　　　　　　　　　　　　　　17 South High Street, Suite 1220
　　　　　　　　　　　　　　　　　　　　Columbus, OH  43215
　　　　　　　　　　　　　　　　　　　　Telephone:　(614) 221-8500
　　　　　　　　　　　　　　　　　　　　Facsimile:　(614) 221-5988
　　　　　　　　　　　　　　　　　　　　E-mail: allen@aksnlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　fisher@aksnlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　gapinski@aksnlaw.com
　　　　　　　　　　　　　　　　　　　　*Proposed Counsel for The Gathering Place Of Columbus*

**Exhibit A**

| Utility Providers | Account Numbers |
|---|---|
| American Electric Power | 10091819036 |
| Columbia Gas | 19433019000100008 |
| City of Columbus, Water | 4151060806 |

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **Case No. 18-55347** |
| | : | |
| **The Gathering Place of Columbus** | : | **Chapter 11** |
| | : | |
| **Debtor.** | : | **Judge C. Kathryn Preston** |

**<u>INTERIM ORDER PURSUANT TO SECTION 105 AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING REFUSING OR DISCONTINUING SERVICE TO THE DEBTOR; (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES TO DETERMINE REQUESTS FOR ADEQUATE ASSURANCE OF PAYMENT
[DOCKET NO.     ]</u>**

This matter having come before the Court upon consideration of the motion (the "Motion") [Doc. No.   ] of The Gathering Place of Columbus, the above-captioned debtor and debtor in possession (the "Debtor"), requesting an entry of an order, pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), (i) determining that Debtor has provided each of its utility providers (each singularly, a "Utility" and, collectively, the "Utilities") with "adequate assurance of payment" in compliance with section 366 of the Bankruptcy Code ("Adequate Assurance"), (ii) approving certain procedures (the "Assurance

Procedures"), which provide for an initial offer of Adequate Assurance to the Utilities and a procedure for the Utilities to request additional or different Adequate Assurance, (iii) prohibiting the Utilities from altering, refusing, or discontinuing utility services to the Debtor except in compliance with the Assurance Procedures, and (iv) setting a final hearing (the "Final Hearing") on the proposed Assurance and Objection Procedures; and upon consideration of the Motion; and it appearing that this Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. §157(b); and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of Debtor, its estate, its creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted here; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED that:

1. The Motion is granted on an interim basis.

2. Debtor is authorized, but not directed, to pay on a timely basis and in accordance with its pre-petition practices all undisputed invoices for post-petition utility services provided by the Utilities to Debtor.

3. Debtor is further authorized to pay on a timely basis and in accordance with its pre-petition practices all undisputed invoices for the most current prepetition utility services provided by the Utilities to Debtor.

4. Within twenty (20) days of receipt of an Adequate Assurance Request, Debtor shall establish the Adequate Assurance Deposit Account and deposit therein a sum equal to the Adequate Assurance Deposit, which is one month of Debtor's estimated cost of utility consumption in its operations for such Utility.

5. Except in accordance with the procedures set further herein and absent further order of the Court, all Utilities are prohibited from (i) discontinuing, altering or refusing service to Debtor on account of the commencement of this chapter 11 case or any unpaid pre-petition charges, and (ii) discriminating against Debtor, or requiring payment of a security deposit or receipt of any other security from Debtor for continued service, as a result of Debtor's bankruptcy filing or any outstanding pre-petition invoices.

6. If a Utility is not satisfied with the assurance of future payment provided by Debtor, the Utility must serve a written request for an Adequate Assurance Deposit (an "Adequate Assurance Request") by submitting such written request to: J. Matthew Fisher, Esq., ALLEN STOVALL NEUMAN FISHER & ASHTON LLP, 17 S. High Street, Suite 1220, Columbus, Ohio 43215 (the "Notice Party").

7. Any Adequate Assurance Request must be in writing to Debtor and set forth: (i) the location for which utility services are provided; (ii) the account number(s) for such locations; (iii) the outstanding balance for each such account; (iv) a summary of Debtor's payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by Debtor; and (v) a proposal for what would constitute adequate assurance of payment from Debtor, along with an explanation of why such proposal is reasonable.

8. Debtor may, in its discretion, consensually resolve any disputes related to an Adequate Assurance Request with the requesting Utility without further order of the Court, and may, in connection with any such resolution and in its discretion, provide the Utility with additional Adequate Assurance, including a cash deposit, prepayments, and/or other forms of security, without further order of the Court, if Debtor determines in its business judgment that the additional Adequate Assurance is reasonable.

9. If Debtor determines that the Adequate Assurance Deposit or any additional Adequate Assurance requested by the Utility is inaccurate or not reasonable, then Debtor shall, within thirty (30) days after the receipt of the Adequate Assurance Request, file a motion (a "Determination Motion"), pursuant to section 366(c)(3) of the Bankruptcy Code, seeking a determination from the Court that the Adequate Assurance Deposit, plus any additional Adequate Assurance offered by Debtor, constitutes adequate assurance of payment.

10. Nothing set forth herein is intended to, nor shall it, modify or alter the burdens of proof in connection with a Determination Motion.

11. Pending notice and a hearing on the Determination Motion, such Utility will be prohibited from altering, refusing, or discontinuing service to Debtor or discriminating against Debtor on account of the commencement of this chapter 11 case or any unpaid pre-petition charges.

12. Based on the funding of the Adequate Assurance Deposit, a Utility will be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further assurance of payment.

13. Within five (5) business days of entry of this Interim Utility Order, Debtor shall serve this Interim Utility Order via first-class mail on the Utilities and shall file a certificate of

service certifying same.

14. The deadline by which objections to the Motion and the Final Utility Order must be filed and served is _____, at _:__ _.m. (Eastern Time). A final hearing, if required, on the Motion will be held on _____ at _:__ _.m. (Eastern Time). If no objections are filed to the Motion, this Court may enter the Final Utility Order without further notice or hearing.

15. Debtor is authorized, in its sole discretion, to amend the list of Utilities attached as Exhibit A to the Motion to add or delete any Utility.

16. Nothing in the Motion, Exhibit A thereto, or this Interim Utility Order constitutes a finding that any entity is or is not a utility company hereunder or under section 366 of the Bankruptcy Code.

17. Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Utility Order.

18. Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall be deemed: (i) an admission as to the validity of any claim against Debtor; (ii) a waiver of Debtor's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined hereunder; (v) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of Debtor's rights under the Bankruptcy Code or any other applicable law.

19. Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of, any claim held by any person.

20. The terms and conditions of this Interim Utility Order shall be immediately

effective and enforceable upon its entry.

      21.    This court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Interim Utility order.

IT IS SO ORDERED.

SUBMITTED AND APPROVED BY:

/s/ J. Matthew Fisher
Thomas R. Allen         (0017513)
J. Matthew Fisher       (0067192)
Erin L. Gapinski        (0084984)
Allen Stovall Neuman Fisher & Ashton LLP
17 South High Street, Suite 1220
Columbus, OH  43215
Telephone:   (614) 221-8500
Facsimile:    (614) 221-5988
E-mail:       allen@aksnlaw.com
              fisher@aksnlaw.com
              gapinski@aksnlaw.com
*Proposed Counsel for The Gathering Place Of Columbus*

**Copies to: Default List, plus Top 20, plus additional parties**

###